**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2698
_____

UNITED STATES OF AMERICA

v.

DIMITRIJ HARDER,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Crim. No. 2-15-cr-00001-001)
District Judge: Hon. Paul S. Diamond

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 10, 2018

Before: McKEE, VANASKIE, and SILER[*], *Circuit Judges*

(Filed: November 8, 2018)

_____

OPINION[**]

_____

_____

[*] Hon. Eugene E. Siler, United States Court of Appeals for the Sixth Circuit, sitting by designation.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SILER**, *Circuit Judge*

In this appeal arising from a conviction under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2 ("FCPA"), defendant-appellant Dimitrij Harder challenges his sentence, alleging procedural errors committed by the district court at sentencing. For the following reasons, we will affirm the district court's ruling.

## I.

Harder—a German citizen, Russian émigré, and U.S. permanent resident—worked as an international financial consultant based in Southampton, Pennsylvania. Between 2008 and 2009, he paid $3.5 million in bribes to an official of the London-based multinational European Bank for Reconstruction and Development ("EBRD"). The bribes sought to expedite approval and financing for Harder's clients in connection with two energy projects in the former Soviet Union.

In 2016, Harder pled guilty to two counts of violating the FCPA. The Probation Office calculated an advisory Guidelines range of 87-108 months' imprisonment. At sentencing, the government moved for a downward departure pursuant to § 5K1.1 in recognition of Harder's cooperation and testimony during a related corruption trial in England that secured convictions against his former clients. The district court granted the downward departure, resulting in a Guidelines range of 57-71 months.

Harder's counsel requested a downward variance, citing the need to avoid unwarranted sentencing disparities pursuant to 18 U.S.C. § 3553(a)(6). In support of this request, the defense presented a chart containing all sentences imposed in FCPA cases nationally over the last decade. This exhibit, prepared by a law professor who studies the

2

FCPA, showed that 33% of defendants received probation. For those sentenced to imprisonment, the average prison sentence was only 13 months.

Harder also argued that the bribes he paid did not result in a loss to any victim and that the two projects for which he corruptly sought financing proved successful and highly beneficial to the Eastern Siberia region. He claimed that the oil pipeline created 6,500 jobs and led to "the uplifting of the entire economy of this region." The district court heard Harder's argument but found it to be unpersuasive. It stated,

> The Congress has determined that doing business through bribery is an evil that must be punished and prohibited. Congress has determined that the whole system suffers. The whole system is a victim when the table [is] crooked in this way regardless of the cultural [indiscernible] you've spent time discussing a moment ago and you spend time discussing in your brief at some length. Saying that people made money as a result of a scheme that began with an illegal bribe doesn't do a lot for me, sir.

Despite the district court's comments, defense counsel continued to argue that Harder's actions were less culpable due to the allegedly positive outcome.

> **The Court**: We're talking about your client bribing a British banking official.
>
> **Counsel**: But to get a result which has related . . .
>
> **The Court**: Had to be the bribe. The bribe had to start it all, right?
>
> **Counsel**: No, it didn't have to.
>
> **The Court**: Then why don't you move on, as I . . .
>
> **Counsel**: I will.
>
> **The Court**: again, request.

The district court proceeded to address each argument raised by Harder's counsel. On the culpability argument, the district court again rejected Harder's claim that he was

less culpable because the bribes resulted in an allegedly beneficial project. The court explained that it had thoroughly considered defense counsel's belief that there was no intended victim and no actual victim. However, it held that the fact that "the transaction was successful and generated jobs in my view does not mitigate the sentence." The court further held that this crime was "a successful effort to corrupt the system by which the EBRD does business."

With respect to Harder's argument about unwarranted sentencing disparities, the district court stated that it had reviewed Harder's exhibit showing the average sentences under the FCPA. Nonetheless, the court declined to grant the downward variance, ruling that "I do not believe it would be reasonable in the circumstances presented here." The court noted that one of Harder's clients, who was prosecuted in England, received a six-year sentence.

At the conclusion of the sentencing hearing, the district court imposed a within-Guidelines sentence of 60 months' incarceration as well as approximately $2 million in financial penalties.

## II. Discussion

When considering a district court's application of the Guidelines to a specific set of facts, we apply a deferential standard and review for clear error. *United States v. Richards*, 674 F.3d 215, 220 (3d Cir. 2012). A sentence is procedurally reasonable where the district court properly calculates the Guidelines range, rules on departure motions, and exercises its discretion by giving meaningful consideration to the relevant factors under 18 U.S.C. § 3553(a). *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir.

4

2006).  Moreover, a district court "need not discuss every argument made by a litigant if an argument is clearly without merit."  *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).  It must, however, "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis."  *United States v. Flores-Mejia*, 759 F.3d 253, 255-56 (3d Cir. 2014).

Harder alleges two procedural errors: (1) the district court denied him a fundamentally fair sentencing hearing when it refused to hear or consider counsel's argument in mitigation of offense severity; and (2) the district court refused to comply with the statutory obligation to avoid unwarranted sentencing disparities.

### A.  Mitigation

First, Harder argues that the district judge interrupted and prevented defense counsel from fully arguing that Harder was less culpable because his bribery did not cause a loss to any victim but rather resulted in "exceptionally positive economic results." Specifically, he claims his crime caused a net benefit in terms of jobs and prosperity in Eastern Siberia.  Harder contends that the "absence of harmful consequences" from his actions should have mitigated the severity of his offense and that the district court erred by refusing to permit or consider his mitigation argument.

However, the record clearly reflects that the district court afforded meaningful consideration to Harder's mitigation argument.  Noting that Harder discussed the allegedly beneficial result of his crime "at great length" in his sentencing memorandum, the court acknowledged that it had "considered everything presented" both in writing and at oral argument.  Nonetheless, the district court remained unpersuaded by Harder's

mitigation argument, as evident from its comment that, "[s]aying that people made money as a result of a scheme that began with an illegal bribe doesn't do a lot for me, sir."

Essentially, Harder contends that the district court erred because it disagreed with him. Yet, a district court need not agree with every sentencing argument made by counsel; the court must simply give meaningful consideration to such arguments. *See United States v. Tomko*, 562 F.3d 558, 569 (3d Cir. 2009) (holding that the district court did not err when it "heard the Government's impassioned plea, considered general deterrence, and handed down [defendant's] sentence," even though it was substantially lower than the sentence sought by prosecutors). Accordingly, the district court did not err by declining to grant Harder's downward variance on the grounds that his conduct was allegedly less harmful than that of other FCPA defendants.

## B. Unwarranted Disparity

Second, Harder sought a downward variance on the basis that his sentence would result in an "unwarranted disparity." Harder claims that the district court ignored his evidence that the average sentence for a defendant in an FCPA case over the last decade was only 13 months and that 33% of defendants received probation. Far from ignoring the argument, as Harder claims, the district court stated that it "considered the need to avoid unwarranted sentencing disparities." As the government correctly argues, "the fact that defendant Harder's sentence was one year less than the sentence imposed on [his client] by a separate sovereign does not reflect a procedural error." A criminal defendant

6

has no constitutional right to receive the same sentence as his co-defendants. *United States v. Hart*, 273 F.3d 379 (3d Cir. 2001).

Here, Harder's FCPA survey chart did not indicate the nature and extent of each defendant's cooperation or role in the offenses. If anything, the chart reflected a lack of general consensus on the appropriate sentences for FCPA violators. Although Harder's bribe was the third largest bribe on the chart, three defendants in cases involving much smaller bribes received longer sentences than Harder. Moreover, Harder's 60-month sentence fell at the low-end of his 57-71 month Guidelines range. And, in creating the Guidelines system, "Congress sought to provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities . . . and maintaining sufficient flexibility to permit individualized sentences when warranted." *United States v. Booker*, 543 U.S. 220, 264 (2005); 28 U.S.C. § 991(b)(1)(B). Harder does not challenge the calculation of his Guidelines range but simply objects to the district court's refusal to grant a downward variance.

## III.

For the foregoing reasons, we affirm the judgment below.